# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2022 ND 229

Denise M. Senger,                                    Plaintiff and Appellee

   v.

James Senger,                                    Defendant and Appellant

### No. 20220040

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Mikayla M. Reis and Todd D. Kranda, Mandan, ND, for plaintiff and appellee.

Justin D. Hager, Bismarck, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   James Senger appeals from a divorce judgment entered following a bench trial. He argues the district court erred by retroactively applying an amended and reenacted version of N.D.C.C. § 14-05-24(1) in valuing the marital estate and, thereby, erred by considering inadmissible evidence and incorrectly valuing the marital home and bank accounts. He further argues the court erred by distributing marital property and by awarding Denise Senger spousal support. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I

[¶2]   James Senger and Denise Senger were married in 1988.  Denise Senger sued for divorce on July 27, 2020. James Senger answered and filed a counterclaim. A bench trial was held on November 18, 2021.  At the time of trial, James Senger was 57 years of age and Denise Senger was 54. They lived in Mandan, North Dakota. Denise Senger was employed with the North Dakota State Penitentiary earning approximately $59,609 annually. James Senger was employed with Burlington Northern Santa Fe Railroad, earning approximately $137,700 annually.

[¶3]   The district court heard testimony from both parties regarding the accumulated assets, debts, and the conduct attributing to the breakdown of this long-term marriage. Testimony revealed that James Senger's alcohol use became problematic, he was verbally abusive towards Denise Senger, and she felt threatened by his drunken, angry behavior.

[¶4]   Denise Senger presented testimony from a real estate agent regarding a market analysis of the marital home valuing the home between $425,000 and $475,000. Denise Senger adopted her valuation of $440,000 by splitting the difference of the appraiser's values. James Senger valued the home at $382,500. The district court found the law existing at the time of the market analysis and time of trial applied, but the distinction had little impact because

the home would be sold. The court further found there was no appraised value of the marital home on July 27, 2020, nor a precise valuation on September 18, 2021. Based on this finding, the court ordered the marital home be sold as an equitable division of the property with the parties each receiving one-half of the net sale proceeds. The court agreed with Denise Senger's value of the marital home based on the market analysis her real estate agent presented.

[¶5] Regarding the financial assets, the district court split all of the parties' bank accounts equally between them. The court awarded each party their individual retirement account balances. The court awarded James Senger $130,000 in unaccounted for cash withdrawals he made from his bank account. The court awarded various real estate holdings and vehicles, which are not in dispute on appeal. After dividing the assets and liabilities, the court calculated an equity adjustment to be paid by James Senger, resulting in an equal division of property. The court awarded Denise Senger spousal support of $1,000 per month. James Senger appeals from the divorce judgment.

[¶6] On appeal, James Senger argues the district court erred by retroactively applying N.D.C.C. § 14-05-24(1) in valuing the marital estate and, thereby, erred by considering inadmissible evidence and incorrectly valuing the marital home and bank account. James Senger further argues the court erred by distributing marital assets and awarding Denise Senger spousal support.

## II

[¶7] Section 14-05-24(1) (2017), N.D.C.C., requires a district court to value the parties' property and debts and "make an equitable distribution" in granting a divorce.[1] Our standard for reviewing a district court's marital property distribution is well established:

> This Court reviews a district court's distribution of marital property as a finding of fact, and will not reverse unless the findings are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no

---

[1] Section 14-05-24(1), N.D.C.C., was amended effective August 1, 2021, after this action commenced.

3

evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct. Valuations of marital property within the range of the evidence presented are not clearly erroneous. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.

*Berdahl v. Berdahl*, 2022 ND 136, ¶ 6, 977 N.W.2d 294 (internal citations and quotation marks omitted) (quoting *Holm v. Holm*, 2017 ND 96, ¶ 4, 893 N.W.2d 492).

[¶8] In distributing marital property, the district court considers the *Ruff-Fischer* factors, which include:

The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Berdahl,* 2022 ND 136, ¶ 7; *Ruff v. Ruff*, 52 N.W.2d 107 (N.D. 1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966). The court is not required to make specific findings on each *Ruff-Fischer* factor; however, we must be able to determine the reasons for the court's decision. *Berdahl*, at ¶7.

A

[¶9] James Senger argues the district court erred by retroactively applying the August 1, 2021 version of N.D.C.C. § 14-05-24(1).

4

[¶10] Whether a statute applies retroactively is a question of law. *Smith v. Baumgartner*, 2003 ND 120, ¶ 9, 665 N.W.2d 12. Questions of law are fully reviewable on appeal. *Klein v. Klein*, 2016 ND 153, ¶ 4, 882 N.W.2d 296.

[¶11] A statute is applied retroactively if it applied to an action that arose before the effective date. *Baumgartner,* 2003 ND 120, ¶ 11. When this action commenced in July 2020, N.D.C.C. § 14-05-24(1) (2017) provided: "If the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or separation or the date on which the parties last separated, whichever occurs first." The amended version of the statute states the valuation date is sixty days before the initially scheduled trial date. N.D.C.C. § 14-05-24(1). In order for a court to retroactively apply a statute, the statute itself must generally contain language expressly declaring the statute to be retroactively applied. N.D.C.C. § 1-02-10 (providing "no part of this code is retroactive unless it is expressly declared to be so"); *see also Klein*, 2016 ND 153, ¶ 12 (holding statutes cannot be applied retroactively without specific legislative direction); *Larson v. Norheim*, 2013 ND 60, ¶ 10, 830 N.W.2d 85 (applying prior version of statute that was in effect at the time the action commenced); *Sorenson v. Felton*, 2011 ND 33, ¶ 9, 793 N.W.2d 799 (same); *Berdahl*, 2022 ND 136, ¶ 6 n. 1 (applying version of N.D.C.C. § 14-05-24(1) at time of commencement). However, laws conferring benefits may be excepted from the general rule on retroactive application. *Baumgartner,* 2003 ND 120, ¶¶ 11-15. Nothing in the statute or the legislative history suggests the amendments were intended to apply retroactively. The district court erred by not applying the version of N.D.C.C. § 14-05-24(1) in effect at the time of commencement of the divorce action.

B

[¶12] Because the district court erred by retroactively applying the statute, we now examine whether the error was harmless. Rule 61 of the North Dakota Rules of Civil Procedure provides guidance for dealing with errors:

> Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Put simply, an error is harmless if it does not affect the outcome of the case or a party's substantial rights.

[¶13] James Senger argues the district court erred by admitting evidence that should have been excluded based on relevancy because it used the incorrect valuation date, and relying on that evidence when valuing the marital home.

[¶14] "A trial court has broad discretion when ruling whether proffered evidence is relevant, and we will not reverse that decision absent an abuse of discretion. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner." *Goff v. Goff*, 1999 ND 95, ¶20, 593 N.W.2d 768 (cleaned up).

[¶15] At trial, Denise Senger presented testimony of a real estate agent and offered into evidence an August 27, 2021, market analysis the agent conducted of the marital home. The valuation indicated the home was a unique property and it was difficult to provide comparable properties because few similar properties had been sold. The valuation included analysis on three comparable homes sold between October 30, 2020 and August 13, 2021. The district court admitted the market analysis into evidence over objection. The following exchange occurred:

> [James Senger's Counsel]: . . . We would object to Exhibit 2 at this time and our objection is based on relevancy regarding this exhibit. We are supposed to use the date of valuation as [sic] commencement in this action. This exhibit purports to be from August 27th of 2021 and the valuation therefrom.

6

THE COURT: All right. The objection is to relevance. Any response, Counsel?

[Denise Senger's Counsel]: I would say that it's relevant. It was the closest date we could get as of the date of commencement, and therefore it's the only real market analysis or evaluation that was offered at all by either party. Therefore, I conclude it's relevant, Your Honor.

THE COURT: All right. Exhibit 2 is going to be received. I do note the objections by [James Senger's counsel], the relevance issues. I do have to relate it back to a specific date. We have an August 2021, date on the market analysis. The Court will have to consider that in taking into account the exhibit.

[¶16] Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. N.D.R.Ev. 401. In a bench trial, it is presumed the district court only considered competent evidence because a judge, when deliberating the ultimate decision, is capable of distinguishing between admissible and inadmissible evidence. *Rath v. Rath*, 2018 ND 138, ¶ 17, 911 N.W.2d 919. As we explained:

In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.

*Haas v. Hudson & Wylie LLP*, 2020 ND 65, ¶ 14, 940 N.W.2d 650.

[¶17] The August 2021 market analysis was relevant because the value of the marital home is a fact of consequence. The court did not abuse its discretion by considering the testimony or the market analysis. Furthermore, the court noted the distinction in the statutory language had "little impact in this case"

7

because the marital home would be sold with both parties splitting the proceeds equally. The court reasoned "there was no testimony at trial regarding the appraised value of the marital home on July 27, 2020 nor a precise valuation on September 18, 2021, given the nature of the property and the availability of comparative sale for comparison purposes."

[¶18] A court's valuations of marital property are not clearly erroneous if they are within the range of evidence presented. *Wald v. Wald*, 2020 ND 174, ¶ 11, 947 N.W.2d 359. "In a bench trial, the district court determines credibility issues, which [this Court] will not second-guess on appeal." *Id.* at ¶ 27. "The district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses and to determine property values." *Datz v. Dosch*, 2013 ND 148, ¶ 22, 836 N.W.2d 598 (cleaned up). The court's marital property valuation depends on the evidence presented by the parties. *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 12, 673 N.W.2d 601.

[¶19] Denise Senger's real estate agent testified providing a market analysis on the marital home. He valued the house between $425,000 and $475,000 based on his analysis comparing the marital home to other comparable properties in the Bismarck-Mandan area. He testified the marital home was a unique property in the area and the August 2021 date he used for the market analysis was the closest he could get to the date of commencement of this action due to the unique nature of the property. He also stated he would hope to get at least $400,000 out of this property if he were to sell it.

[¶20] Denise Senger testified her "owner's value" of the marital home was $440,000, which splits the difference between $400,000 and $475,000, the high end of the market analysis. James Senger testified his "owner's value" of the marital home on the date of commencement was $382,500. The district court found the marital home's value was $440,000, finding the range the real estate agent offered most credible and persuasive. The record supports the court's findings.

[¶21] The district court's use of the incorrect version of the statute to determine the valuation date for the marital home was harmless. Even if the

valuation of the home was affected, it did not affect either party's substantial rights. The parties were each awarded fifty percent of the equity of the home. The court asked James Senger about selling the house at trial: "[I]f there's no agreement as to the value of the house, and I ordered as a judge that the property be placed on the open market and sold, would you agree to do that?" James Senger replied, "Yes." The court ordered the marital home be listed for sale within 90 days of entry of judgment with the parties to share the proceeds, and the option for either party to purchase the home at one-half of the court's value. James Senger has not provided any legal authority that he was entitled to receive any particular marital property; therefore, he has not established his substantial rights were affected by the court's valuation of the property or ordering the marital home be sold.

C

[¶22] James Senger argues the district court erred by considering evidence that should have been excluded when assigning value to a bank account. James Senger and Denise Senger agreed through the property and debt listing that the current value of one of the accounts at issue was $32,000. However, James Senger argues the court must address $17,969 missing from an account that was closed.

[¶23] The district court addressed the $17,969 transaction. The court heard testimony from Denise Senger and the parties' daughter relating to the transaction. The court found Denise Senger and her daughter to be credible, as they both unequivocally testified that loans were often made between the sisters for school expenses. The court found the account at issue was jointly owned by Denise Senger and her daughter, these accounts were not commingled, and the disputed amount was a loan between the daughter and her sister. We will not second guess the credibility the district court gave to the testimony. *See Datz*, 2013 ND 148, at ¶ 22 (explaining the district court is better positioned to judge credibility, observe witness's demeanor, and determine property values). The court properly relied on the testimony it found more credible.

9

D

[¶24] James Senger argues the district court erred by identifying cash withdrawals made prior to commencement of the divorce as marital assets. According to James Senger, the cash withdrawals he made should not have been considered an asset for distribution because they did not exist when the action commenced.

[¶25] The district court found James Senger used or misappropriated marital assets since the service of the summons in the amount of $130,000. Economic fault and dissipation of marital assets are proper factors to consider when determining an equitable distribution of property. *Horner v. Horner*, 2004 ND 165, ¶ 16, 686 N.W.2d 131.

[¶26] The district court relied on plaintiff's trial exhibit 13 regarding James Senger's unaccounted for cash withdrawals amounting to $130,000. This exhibit shows the withdrawal of $140,700 occurred between June 2017 and July 2020, prior to commencement of the divorce. It is unclear why the court used the amount of $130,000 rather than the $140,700, or why the court looked at cash withdrawals during this prolonged period prior to commencement of the divorce. Although credible testimony may have existed that James Senger withdrew cash without adequately accounting for it, we are unable to discern the basis for the district court's findings on this issue. Therefore, we reverse the court's award to James Senger of unaccounted for cash withdrawals as a marital asset and remand with instructions to further explain its reasoning on any unjustified use or dissipation of marital assets by James Senger.

III

[¶27] James Senger argues the district court erred by awarding spousal support to Denise Senger.

[¶28] District courts may award spousal support under N.D.C.C. § 14-05-24.1. "When determining whether to award spousal support, 'the court must consider the *Ruff-Fischer* guidelines, the needs of the spouse seeking support, and the ability of the other spouse to pay.'" *Quamme v. Quamme*, 2021 ND 208,

10

¶ 14, 967 N.W.2d 452 (quoting *Willprecht v. Willprecht*, 2020 ND 77, ¶ 40, 941 N.W.2d 556).

[¶29] "'Spousal support and property distribution are interrelated and intertwined and must be considered together.'" *Lizakowski v. Lizakowski*, 2017 ND 91, ¶ 21, 893 N.W.2d 508 (quoting *Krueger v. Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671). We remand on the spousal support issue because we reversed and remanded on the property division issue. However, while we do not fully review the district court's analysis on spousal support, the court should be mindful on remand to consider Denise Senger's current needs for spousal support rather than hypothetical needs. The district court found that Denise Senger had several years before reaching retirement age and Medicare eligibility and would have to factor in future health insurance costs if she did not continue employment with the State of North Dakota. Our cases require a finding on the current known needs of the requesting spouse and leave hypothetical future needs to consideration of changed circumstances by the district court under a motion to modify a support award. *Knudson v. Knudson*, 2018 ND 199, ¶ 21, 916 N.W.2d 793 ("We have previously affirmed a court's denial of spousal support when . . . the requesting spouse had the ability to adequately address her *current* needs . . . .") (emphasis added). The district court should reconsider spousal support in light of any changes made in the division of property.

V

[¶30] The district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

[¶31] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Lisa Fair McEvers
Jerod E. Tufte
Bruce Haskell, S.J.

[¶32] The Honorable Bruce Haskell, S.J., sitting in place of Crothers, J., disqualified.